UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA,      )
                               )
           v.                  )      No. 1:14-cr-00033-JAW-1
                               )
BENJAMIN ROSSIGNOL,            )
                               )

**ORDER ON REQUEST FOR BRADY MATERIALS AND MOTION FOR
SENTENCE REDUCTION**

An inmate serving a two-hundred-and-sixty-four-month sentence for transporting and possessing child pornography moves for the production of *Brady* materials and for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Consistent with caselaw from this district and the First Circuit, the court denies the defendant's request for *Brady* production post-conviction. The court concludes the motion for sentence reduction is unripe and dismisses the motion without prejudice.

## I.    BACKGROUND

On March 19, 2014, a federal grand jury indicted Benjamin A. Rossignol for transportation of child pornography and possession of child pornography, violations of 18 U.S.C. § 2252A(a)(1) and § 2252A(a)(5). *Indictment* (ECF No. 5). Mr. Rossignol pleaded guilty to both charges on May 8, 2014. *Min. Entry* (ECF No. 28). On October 27, 2014, this Court sentenced him to 240 months of incarceration on Count One, the transportation charge, and 24 months on Count Two, the possession charge, to be served consecutively. *Min. Entry* (ECF No. 37); *J.* (ECF No. 40). Mr. Rossignol filed a timely notice of appeal; on August 28, 2015, the Court of Appeals for the First Circuit dismissed the appeal on the ground that there was no non-frivolous basis for

appeal and granted counsel's motion to withdraw, summarily affirming the judgment. *First Notice of Appeal* (ECF No. 42); *J.* (ECF No. 55).[1]

On February 20, 2024, Mr. Rossignol, acting pro se, filed a motion for sentence reduction. *Mot. for Reduction of Sentence* (ECF No. 70) (*Def.'s Sentence Reduction Mot.*). Based on his aging mother's declining health, his own medical conditions, and allegations of repeated physical and mental abuse by a corrections officer at FCI Ray Brook, Mr. Rossignol requests that the Court reduce his term of incarceration from 264 months to 204 months. *Id.* at 1-7. On March 19, 2024, the Government responded opposing a sentence reduction. *Gov't's Resp. in Opp'n to Def.'s Mot. for Reduction of Sentence* (ECF No. 76) (*Gov't's Sentence Reduction Opp'n*). Mr. Rossignol replied on August 20, 2024. *Reply to Gov't's Resp. to Mot. for Reduction in Sentence* (ECF No. 102) (*Def.'s Sentence Reduction Reply*).

Separately, on March 14, 2024, Mr. Rossignol filed a motion for appointment of counsel to, among other things, assist him in gathering information "to support [his] claims of inadequate medical care." *Mot. for Appointment of Counsel* at 1 (ECF No. 75) (*Def.'s Counsel Mot.*). On April 10, 2024, the United States Magistrate Judge issued an order, denying Mr. Rossignol's motion for appointed counsel without prejudice. *Order on Mot. to Appoint Counsel* (ECF No. 80). The Magistrate Judge wrote that he had reviewed relevant statutes, caselaw, and Mr. Rossignol's motion, and declined to appoint counsel because the Court "cannot conclude that Defendant

---

[1]    Although not relevant to the issues in Mr. Rossignol's motions, to be accurate, Mr. Rossignol filed two appeals: one on November 5, 2014, *Notice of Appeal* (ECF No. 42), and a second on November 10, 2014. *Notice of Appeal* (ECF No. 46). On February 17, 2015, the Court of Appeals for the First Circuit dismissed the second appeal as duplicative. *J.* (ECF No. 52).

is likely to prevail on this motion." *Id.* at 1-2.  On April 22, 2024, Mr. Rossignol objected to the Magistrate Judge's order, which he amended on May 3, 2024.  *Obj. to Order on Mot. to Appoint Counsel (Doc. # 80)* (ECF No. 82); *see also Am. Obj. to [ECF 80] ORDER denying without prejudice [ECF 75] Mot. to appoint counsel* (ECF No. 86). On May 8, 2024, the Court overruled Mr. Rossignol's objections.  *Order Overruling Objs. to Order on Mot. for Appointment of Atty.* (ECF No. 89) (*Order Overruling Objs.*). Mr. Rossignol appealed the Court's order dismissing his motion to appoint counsel to the United States Court of Appeals for the First Circuit on May 22, 2024.  *Notice of Appeal* (ECF No. 91).  The First Circuit dismissed the appeal and returned jurisdiction to this Court on August 8, 2024.  *J.* (ECF No. 100); *Mandate* (ECF No. 101).

Meanwhile, on May 2, 2024, Mr. Rossignol filed a request for *Brady* materials. *Req. for Brady Materials* (ECF No. 83) (*Def.'s Brady Req.*).  His order "request[s] the government provide [him] with a copy of all documents that may help [him] reduce [his] sentence or otherwise be exculpatory." *Id.* at 1.  On May 22, 2024, the Government responded in opposition.  *Gov't Resp. in Opp'n to Def.'s Req. for Brady Materials* (ECF No. 90) (*Gov't's Brady Opp'n*).  Mr. Rossignol did not reply.

The Court issues this order to respond to Mr. Rossignol's two pending motions. As the Defendant's request for *Brady* materials may affect the record the Court considers in ruling on compassionate release, this order addresses the Defendant's *Brady* request first.

## II.    THE DEFENDANT'S REQUESTS FOR *BRADY* MATERIALS

### A.    The Parties' Positions

#### 1.    The Defendant's Request

Mr. Rossignol asks the Court to issue an order mandating the Government "provide [him] with a copy of all documents that may help [him] reduce [his] sentence or otherwise be exculpatory." *Def.'s* Brady *Req.* at 1.  He says his request includes but is not limited to:

1. All documents relating to me, during my time at FCI Ray[ ][B]rook, including: memorandums, investigative reports, incident reports, psyc[h]ology reports.

2. The names and photos of all staff members that worked in the Special Housing Unit at FCI Ray[ ][B]rook when I was there.

3. All documents regarding complaints filed against those officers.

*Id.* at 1-2.

He avers "[t]hese documents are vital to [his] motion [for compassionate release]" and "[t]he US Atto[]rney's Office has access to this kind of info and I should also." *Id.* at 2.

#### 2.    The Government's Opposition

The Government opposes Mr. Rossignol's motion on several grounds.  First, it argues he is not entitled to the materials he requests, observing that the Defendant "calls his motion a 'Request for *Brady* materials,' but he appears to be seeking records from BOP relating to his incarceration at FCI Ray Brook and the employees who worked there at the time." *Gov't's* Brady *Opp'n* at 2.  The Government alleges the Defendant fails to provide a legal basis for his right to obtain these materials post-

4

conviction and proceeds to cite caselaw and the Federal Rules of Criminal Procedure in support of its argument that Mr. Rossignol's motion is procedurally improper. *Id.* at 2-5 (citing, e.g., *United States v. Astacio-Espino*, No. 12-200, 2017 U.S. Dist. LEXIS 229484, at *4 (D.P.R. Feb. 13, 2017) ("[T]he Federal Rules of Criminal Procedure do not provide defendants with a right to post-conviction discovery, either"); FED. R. CRIM. P. 1(a)).

Second, while the Government acknowledges Rule 6 of the Rules Governing Section 2255 Proceedings allows the Court to authorize discovery for "good cause," the moving party bears the burden to provide reasons for the request. *Id.* at 3-4. The Government says, "even assuming Rossignol could establish that he is entitled to discovery in this matter, he fails to show why the requested materials are relevant to his claims for a sentence reduction." *Id.* at 4.

Third, the Government proffers the Defendant's motion should be denied "because his requests are extremely broad and oppressive." *Id.* (citing *United States v. True Yang Vangh*, No. 16-335, 2020 U.S. Dist. LEXIS 61857, at *2 (D. Minn. Apr. 8, 2020) (concluding that "[e]ven if a Rule 17(c) subpoena was available" in the context of a motion for compassionate release, "the Defendant's document requests . . . would be unreasonable and oppressive"). Mr. Rossignol's request is a "fishing expedition," the Government insists. *Id.* at 5.

Finally, "[t]o the extent Rossignol is seeking records relating to his alleged abuse, no such records exist," the Government contends. *Id.* (emphasis omitted). The

Government explains that BOP has advised there is no record of the Defendant ever reporting the abuse allegations he raises in his motion for compassionate release. *Id.*

For all these reasons, the Government urges the Court to deny Mr. Rossignol's request for the post-conviction production of *Brady* materials. *Id.*

## B.    Legal Standard[2]

In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court extended the scope of disclosable material when it concluded that the jury was entitled to know information about a government witness that was relevant to the witness's credibility. *Id.* at 154-55. In *United States v. Bagley*, 473 U.S. 667 (1985), the Supreme Court clarified that the government's disclosure obligations include impeachment evidence. *Id.* at 676.

At the same time, in *Weatherford v. Bursey*, 429 U.S. 545 (1977), the Supreme Court emphasized that there "is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Id.* at 559; *see also Kaley v. United States*, 571 U.S. 320, 335 (2014) (quoting *Bursey*, 429 U.S. at 559-61). In practical terms, as the First Circuit has written, the "government is primarily responsible for

---

[2]    Federal Rule of Criminal Procedure 16 requires that, upon request from a defendant, the Government must provide the defendant with certain information. FED. R. CRIM. P. 16(a). There is no indication that the Government failed to comply with its Rule 16(a) discovery obligations in this case and Mr. Rossignol makes no argument to that effect.

6

deciding what evidence it must disclose to the defendant under *Brady*. And at least where a defendant has made only a general request for *Brady* material, the government's decision about disclosure is ordinarily final—unless it emerges later that exculpatory evidence was not disclosed." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011) (citations omitted). However, the situation is different if the defendant has requested specific materials and the government maintains they are not discoverable; in that case, the Court may perform an *in camera* review of the disputed materials. *Id.*

Further, "the Supreme Court has explicitly rejected *Brady*'s applicability to postconviction proceedings" because "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Tevlin v. Spencer*, 621 F.3d 59, 70 (1st Cir. 2010) (quoting *Dist. Att'y's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009)). Similarly, Federal Rule of Criminal Procedure 16, which "govern[s] discovery" in criminal cases, *United States v. Hensel*, 699 F.2d 18, 39 (1st Cir. 1983), grants "only pretrial discovery," *United States v. Nobles*, 422 U.S. 225, 235 (1975), and "the continuing duties of parties to disclose under the Rule ends upon conviction," *Astacio-Espino*, 2017 U.S. Dist. LEXIS 229484, at *4 (citing FED. R. CIV. P. 16(c)).

###     C.     Discussion

The Court agrees with the Government that Mr. Rossignol's request for the court-ordered production of *Brady* materials after his conviction is procedurally improper. The First Circuit has explained that the Supreme Court "explicitly rejected

*Brady*'s applicability to postconviction proceedings." *Tevlin*, 621 F.3d at 70 (citing *Dist. Att'y's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009)). In *Osborne*, the Supreme Court observed that once a criminal defendant has been convicted, "the presumption of innocence disappears," *id.* at 69 (quoting *Herrera v. Collins*, 506 U.S. 390, 399 (1993)), and an incarcerated defendant "does not have the same liberty interests as a free man." *Id.* at 68.  Therefore, for post-conviction matters, "*Brady* is the wrong framework." *Id.*  Mr. Rossignol has given the Court no reason or argument to deviate from this established precedent. *See Def.'s* Brady *Req.* at 1-2.  Until the Supreme Court or the Court of Appeals for the First Circuit has revoked a binding precedent, this district court is bound by their rulings. *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 348-49 (1st Cir. 2004).

Based on the foregoing, the Court DENIES the Defendant's Request for *Brady* Materials (ECF No. 83).

## III.    THE DEFENDANT'S MOTION FOR SENTENCE REDUCTION

### A.    The Parties' Positions

#### 1.    The Defendant's Motion

Mr. Rossignol moves the Court to reduce his sentence "from 264 months to 204 months, or by any amount the Court finds more fitting."[3] *Def.'s Sentence Reduction Mot.* at 1.  He tells the Court he would like to "use his remaining 3 ye[ars] to complete

---

[3]    The Court considers Mr. Rossignol's motion as a request to reduce his sentence from 264 to 204 months.  Mr. Rossignol specifically requested a sixty-month reduction so as to allow him the requisite three years to participate in a sex offender treatment program. *Def.'s Sentence Reduction Mot.* at 6.  For the Court to consider a shorter sentence beyond what Mr. Rossignol suggested would be to ignore his own wishes to engage in sex offender treatment.

the sex offender treatment program," and then, upon release, to reside with his mother in South Carolina. *Id.* at 6.

### a. Extraordinary and Compelling Reasons

First, the Defendant avers his health conditions present an extraordinary and compelling reason for his early release. *Id.* at 2. Specifically, "Rossignol's health has declined. He has elevated A1C, and weight, chronic joint and skin inflammation, as well as a permanent partial loss of taste and smell," the last of which he attributes to repeated exposure to COVID-19. *Id.* Mr. Rossignol explains that "[a] person's A1C level is an indicator of diabetes [and] failing to address it can lead to permane[nt] injury, loss of limbs, or loss of life. It is a progressive disease that must be dealt with at the earliest opportunity."[4] *Id.*

Mr. Rossignol says, "[t]he BOP is aware of these problems, but is taking no action to treat them." *Id.* "The lack of medical care is cumulative and compounding over the years," he says, noting "[he has] pain and swelling in [his] knees and wrists but they won't put it in [his] file nor will they examine this. The same goes for [his] neck injury likely caused by the repeated hits to [his] head during the assault that was orchestrated by Officer Chapman of FCI Ray Brook." *Id.* at 5. He reports this injury causes him to experience chronic pain, sometimes to the point of nausea, as well as numbness and tingling in his right arm. *Id.* Mr. Rossignol also says the BOP's doctor recommended annual eye exams, but he has yet to receive such an exam. *Id.*

---

[4]     Mr. Rossignol tells the Court that "medical records for Rossignol are over 1" thick. They can be provided upon request." *Def.'s Sentence Reduction Mot.* at 2.

Second, the Defendant states that he "was subjected to repeated physical and mental abuse directly by and at the direct[ion] of Officer Chapman of FCI Ray Brook." *Id.* at 3. He alleges that Officer Chapman, among other things, spit in his food, threw away his mail, "overtightened [the Defendant's] handcuffs" causing a cut on his wrist, "forg[o]t" to turn on the hot water in Mr. Rossignol's shower, and "told an active gang member what [he] was in prison for [and] then put him in a cell with [the Defendant]" leading to the assault described above. *Id.* at 3-4. "[Officer Chapman] made it very clear that he hated me because of my conviction for child porn," the Defendant alleges. *Id.* at 3.

Third, Mr. Rossignol suggests his aging mother presents an independent extraordinary and compelling reason for sentence reduction, informing the Court that his mother "is no longer capable of doing heavy chores around her house, like mowing the lawn, or cleaning the solar panels on her roof." *Id.* at 5. He reports, "[b]ecause she lives in South Carolina there is no other family nearby to help her." *Id.*

### b.    Administrative Exhaustion

Mr. Rossignol states that he sent a request to Warden R. Thompson on November 13, 2023 and did not receive a response. *Id.* at 2.

### c.    Section 3553(a) Factors

Turning to the Section 3553(a) factors, Mr. Rossignol asserts "[i]t is clear that 204 months of incarceration plus 240 months of supervised release is sufficient to reflect the seriousness of the crime, promote respect for the law, and provide just punishment." *Id.* at 6. He adds that supervised release is "a very effective tool for

deter[r]ing criminal conduct and protecting the public from further crimes." *Id.*
Finally, the Defendant argues that his current sentence length is preventing him
from participating in a sex offender treatment program; "[a] reduction to 204 months
would result in a transfer to a medical facility to receive sex offender treatment, and
may result in better physical health care." *Id.*

### 2.    The Government's Opposition

The Government opposes Mr. Rossignol's motion, proffering that he has not
shown extraordinary and compelling reasons for sentence reduction, has failed to
exhaust administrative remedies, and the 18 U.S.C. § 3553(a) factors counsel against
his early release.

The Government reports that, as of February 21, 2024, Mr. Rossignol served
ten years, three months, and 14 days, amounting to 46.7 percent of his total sentence.
*Gov't Sentence Reduction Opp'n* at 5 (citing *id.*, Attach. 1, *BOP's Sent'g Monitoring
Computation Data for Benjamin A. Rossignol* (*BOP Sent'g Monitoring Data*)). His
projected release date is August 7, 2032. *Id.* (citing *BOP Sent'g Monitoring Data*).

### a.    Extraordinary and Compelling Reasons

The Government first addresses Mr. Rossignol's claim that inadequate medical
care and abuse amount to an extraordinary and compelling reason justifying a
reduction in sentence. The Government contends the Defendant has not established
he received inadequate care while in prison, *id.* at 9, directing the Court to the
Defendant's healthcare records from 2021 to 2024 which "show that BOP has
completely and diligently handled Rossignol's medical issues." *Id.* at 10 (citing *id.*,

Attach. 4, *Med. Recs. from BOP for Benjamin A. Rossignol (Redacted)*).  Further, it says, "[t]here is no indication that Rossignol has complained of or sought treatment for his concerns about weight gain, permanent partial loss of taste or smell from COVID-19, or chronic joint and skin inflammation."  *Id.* at 11.

Next, the Government proffers that, even assuming Mr. Rossignol's allegations of physical abuse are true, he has not established he was subjected to physical abuse that resulted in serious bodily injury committed by or at the direction of a correctional offer.  *Id.* at 13.  "Nor has Rossignol shown that the alleged abuse or misconduct resulted in 'a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger,'" the Government adds.  *Id.* (quoting U.S.S.G. § 1B1.13(b)(4)).

Second, the Government argues Mr. Rossignol's health does not constitute an extraordinary and compelling reason because the Defendant "is not suffering from a terminal illness."  *Id.* at 12 (citing U.S.S.G. § 1B1.13(b)(1)(A)).  The Government claims he has failed to show that any of his conditions "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  *Id.* (quoting U.S.S.G. § 1B1.13(b)(1)(A)).

Third, the Government asserts the Defendant's "desire to care for his mother" is not an extraordinary and compelling reason.  *Id.* at 14 (emphasis removed).  The Government argues the Defendant has submitted no evidence that would allow the Court to conclude his mother is "incapacitated" as contemplated by U.S.S.G. §

12

1B1.13(b)(3)(C), or that he is "the only available caregiver" for his mother, as § 1B1.13(b)(3)(C) also requires.  *Id.*

### b.    Administrative Exhaustion

Next, the Government alleges Mr. Rossignol has not exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).  *Id.* at 7.  Exhaustion is mandatory unless waived or conceded, the Government says, *id.* at 8 (citing *United States v. Doe*, No. 2:11-cr-00136-GZS, 2022 U.S. Dist. LEXIS 210135, at *4 (D. Me. Nov. 21, 2022) (citation amended)), and to properly exhaust administrative remedies in accordance with § 3582(c)(1)(A), "an inmate is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the [district] court," *id.* (quoting *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021)).

Here, the Government concedes that BOP records reflect Mr. Rossignol submitted a request dated November 13, 2023 to the Warden.  *Id.* (citing *id.*, Attach. 2, *Rossignol's Req. to BOP* (*Admin. Req.*)).  However, the Government says, the ground for Mr. Rossignol's administrative request was that a reduction would "allow for programming," "get[] [him] out to [his] aging mother sooner to assist her with laborious tasks," and "get [him] better healthcare."  *Id.* at 8-9 (quoting *Admin. Req.*).  "[N]owhere in Rossignol's request to the Warden does he assert that he was receiving inadequate medical care or subjected to abuse," the Government says, insisting Mr. Rossignol has failed to exhaust his administrative remedies because he did not raise these issues in his motion before BOP.  *Id.* at 9 (citing *Williams*, 987 F.3d at 703).

### c.    Section 3553(a) Factors

The Government asserts that all of the 18 U.S.C. § 3553(a) factors counsel against the Defendant's early release. *Id.* at 14-15. First, the Government submits that Mr. Rossignol remains a danger to the community and that the nature and circumstances of his offense weigh against sentence reduction. *Id.* at 15. The Government reminds the Court that at sentencing the Court characterized Mr. Rossignol's conduct as "simply reprehensible," "clearly deliberate," "thought out," and "an astonishing breach of trust." *Id.* (quoting *Sentencing Tr.* at 29, 30 (ECF No. 51) (citation fixed)).[5] The Government argues:

> [The Defendant] took advantage of his newborn daughter by taking sexually explicit images of her when she was only two weeks old, and he sent those images to an undercover officer. Alarmingly, Rossignol also told the undercover officer that he "[did not] really want to do stuff with [her] . . . till about 2."

*Id.* (quoting *PSR* ¶ 4). At the sentencing hearing, the Government reports the Court said that Mr. Rossignol was willing to use his "baby, vulnerable, unaware, seeking [his] protection, to take advantage of her in order to gain access to a website where [he] could get images of other people taking advantage of children." *Id.* at 4 (citing *Sentencing Tr.* at 31). Further, the Defendant's conduct also involved "at least as regards to his baby daughter, hands-on contact." *Id.* (citing *Sentencing Tr.* at 29).

---

[5]    The Government attributes these and other quotations to the Sentencing Transcript at ECF No. 37. *See, e.g.*, *Gov't's* Brady *Opp'n* at 15. ECF No. 37 is the Minute Entry from Mr. Rossignol's sentencing hearing on October 27, 2014, but this docket entry does not include a sentencing transcript. Instead, the sentencing transcript appears on the docket at ECF No. 51 and ECF No. 54. The Court fixed the Government's citation.

In addition, the Government reports, the nature of the Defendant's offense involved "secretly set[ting ]up a spy camera in a family bathroom to record his 14-year-old relative using the bathroom and getting out of the shower." *Id.* at 15. A forensic examination of the electronic evidence seized from the Defendant's devices showed that he possessed multiple videos from the hidden camera of his teenage daughter "using the toilet and getting out of the shower naked (which had been edited to focus on the minor's breasts and vagina), as well as footage of an adult relative." *Id.* at 2. In total, he was found in possession of five videos of child pornography and over 300 images of child pornography, some of which involved prepubescent minors under age 12 and the portrayal of sadistic or masochistic conduct. *Id.* at 2-3, 15.

The Government again reminds the Court of its stance at the sentencing hearing, at which time the Court had said that while it could "not prevent [Rossignol] from getting out of jail at some point, at a time when [he's] capable of producing another child, and creating another victim," the Court did have the "ability to put [him] in jail long enough to significantly reduce the likelihood of that happening." *Id.* at 16 (quoting *Sentencing Tr.* at 32). "The nature of Rossignol's conduct and his lack of sexual offender treatment demonstrate that he continues to pose a serious risk to children," the Government argues. *Id.*

Finally, the Government opposes a sentence reduction because the Court imposed a sentence below the range of 324 to 405 months suggested by the United States Sentencing Guidelines, and Mr. Rossignol has not yet served half of his imposed sentence. *Id.* (citing *Sentencing Tr.* at 24; *BOP Sent'g Monitoring Data*).

### 3.    The Defendant's Reply

#### a.    Administrative Exhaustion

Mr. Rossignol contends "[n]owhere in 3582(c)(1)(A) does the law require [his] request to the Warden be specific as to why [he is] requesting a reduction in sentence." *Def.'s Sentence Reduction Reply* at 1.  However, the Defendant argues he nonetheless "briefly state[d] [his] reasons," and explains his "omitted the staff abuse due to fear of retaliation." *Id.*

#### b.    Section 3553(a) Factors

Turning to the 18 U.S.C. § 3553(a) factors, the Defendant asserts "204 months is a very serious sentence for a very serious offense," claiming "[i]t is about twice the average sentence for the crime I was convicted of." *Id.* at 2.  He also argues his offense "is not born[] out of disrespect for the law," and that a 204-month sentence remains just. *Id.*

Addressing the remaining § 3553(a) factors, Mr. Rossignol argues his current prison term is greater than necessary to achieve adequate deterrence from criminal conduct and protect the public from his further crimes. *Id.* at 3.  "The most effective means of achieving these goals," he says, "is proper counseling, supervision, and support from positive role models, all of which [he] will have if [he] succeed[s] in this motion." *Id.*   He explains, "[his] current sentence is preventing [him] from participating in the Residential Sex Offender Treatment Program because [he] ha[s] too much time remaining." *Id.* at 5.  Mr. Rossignol argues his recidivism risk is low, *id.* at 3-4, and notes that the Sentencing Commission's recent guidelines amendments

documents that brain development continues "until the mid[-]20s on average, potentially contributing to impulsive actions and reward[-]seeking behavior." *Id.* at 5.

### c. Extraordinary and Compelling Reasons

Mr. Rossignol reiterates his argument that his medical needs amount to an extraordinary and compelling reason for his release. *Id.* He claims the BOP "is not addressing [his] medical needs," and says he has not received an annual eye exam, is pre-diabetic and not receiving the low-carbohydrate diet a nurse instructed as treatment, and has not been treated for a previous concussion. *Id.* at 5-6. "Granting this motion would allow me to get effective correctional treatment and medical care," he insists. *Id.* at 6.

The Defendant also argues that the "staff abuse" he has experienced while incarcerated amounts to a separate extraordinary and compelling reason for sentence reduction. *Id.* at 6.

Finally, Mr. Rossignol argues his mother "is incapable of safely caring for herself," and tells the Court that, after he submitted his motion for compassionate release, his mother "suffered a fall on her tailbone which has further crippled her." *Id.* at 7. The Defendant urges the Court "to please not let the Government's emotional fantasy [about his risk of recidivism] get in the way of protecting the health, safety, and life of a real person[, his mother,] who is one fall away from making this motion moot." *Id.*

### B.    Discussion

#### 1.    Administrative Exhaustion

In 18 U.S.C. § 3582(c)(1)(A), Congress laid out the requirements for a defendant to file a motion for sentence reduction directly with the court, providing that a court may only modify a term of imprisonment where:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A); *see also United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023) ("a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or after thirty days have elapsed from the relevant facility's receipt of such request").

This Court has previously held that "[s]uccessive compassionate release motions must independently satisfy the exhaustion requirement." *United States v. Cain*, No. 1:16-cr-00103-JAW, 2021 U.S. Dist. LEXIS 20672, at *10-11 (D. Me. Feb. 3, 2021) (collecting cases). As the Court explained in *Cain*: "[e]ven though [the defendant] made a similar request for release [months before], these factors may well have changed in the ensuing months and the statute contemplates that the Warden be given an opportunity to make an internal assessment based on then current conditions." *Id*. at *12-13. While motion-specific exhaustion is required, issue-specific exhaustion remains unresolved in this circuit. *See United States v. Gordon*,

18

No. 1:19-cr-00007-JAW, 2023 U.S. Dist. LEXIS 223293, at *8-9 (D. Me. Dec. 15, 2023); *United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me. Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit"); *accord United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty—but we need not resolve that question today").

In the instant case, the Government concedes that BOP records reflect Mr. Rossignol submitted a request dated November 13, 2023 to the Warden, *Gov't's Opp'n.* at 8 (citing *Admin. Req.*), but argues the Defendant has not satisfied his burden of administrative exhaustion because his request to the Warden did not assert that he was receiving inadequate medical care or subjected to abuse. *Id.* at 9 (citing *Williams*, 987 F.3d at 703). In his reply, Mr. Rossignol contends "[n]owhere in 3582(c)(1)(A) does the law require [his] request to the Warden be specific as to why [he is] requesting a reduction in sentence." *Def.'s Sentence Reduction Reply* at 1.

Although Mr. Rossignol is correct on the current state of the law in this circuit, the Government correctly points out that other circuit courts of appeals have resolved this issue and ruled that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *Williams*, 987 F.3d at 703; *accord United States v. Gieswein*, 832 Fed. Appx. 576, 578

(10th Cir. 2021). Issue exhaustion remains an open question in the First Circuit, but Mr. Rossignol should be aware that, if he files a motion for compassionate release in the future, he may not be able to raise in his petition issues that he did not first raise with the Warden.

For the purposes of the present motion and in the interest of judicial efficiency, the Court assumes without deciding that Mr. Rossignol properly exhausted his administrative remedies on the inadequate medical care and abuse claims he did not bring to the Warden's attention.

## 2. Ripeness

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). The constitutional doctrines of standing, ripeness, and mootness evolved to ensure that any matter the Court considers meets this requirement. *See Poe v. Ullman,* 367 U.S. 497, 502-505 (1961) ("within the framework of our adversary system, the adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity"); *see also United States v. Univ. of Mass., Worcester*, 812 F.3d 35, 44 (1st Cir. 2016) ("Federal courts are courts of limited jurisdiction. They cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects").

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).  Courts developed the doctrine "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements" when those disagreements are premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (citations omitted).

Here, the Court raises ripeness sua sponte because Mr. Rossignol requests the Court issue an order in January 2025 stating that the Defendant shall be released in approximately August 2027.  *See Univ. of Mass., Worcester*, 812 F.3d at 44 ("Federal courts . . . cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects").  Putting a finer point on the jurisdictional issue, Mr. Rossignol does not ask the Court to grant his motion for sentence reduction and release him from prison immediately.  Rather, the Defendant asks the Court to order that his sentence be reduced from 264 to 204 months.  The Government reports that, as of February 21, 2024, Mr. Rossignol had served ten years, three months, and 14 days, amounting to 46.7 percent of his total sentence, and his projected release date is August 7, 2032.  *Gov't's Opp'n.* at 5 (citing *BOP Sent'g Monitoring Data*).  Thus, the

Defendant's pending motion asks the Court to order compassionate release approximately three years from now.

The Supreme Court has directed lower courts to presume that a cause lies outside of the federal judiciary's limited jurisdiction "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As the party asserting ripeness, Mr. Rossignol thus bears the burden of demonstrating that the case is ripe, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and he must do so "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Ripeness has two core elements: fitness and hardship. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). Fitness requires that judicial review not rest "upon contingent events that may not occur as anticipated, or indeed may not occur at all." *Labor Rels. Div. of Constr. Indus. of Mass. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016) (quoting *City of Fall River v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007)). "Federal courts cannot—and should not—spend their scarce resources in what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." *Ernst & Young*, 45 F.3d at 537. Under the hardship prong, the Court considers whether

"the challenged action creates a direct and immediate dilemma for the parties." *Id.* at 535 (internal quotation marks omitted).

Mr. Rossignol's request for an immediate order granting a sentence reduction but resulting in his future early release fails to satisfy either ripeness prong. First, Mr. Rossignol has not established his request is presently fit for resolution. The Defendant requests a five-year sentence reduction on a sentence that has approximately eight years left. To support his request, Mr. Rossignol cites his mother's and his own health as extraordinary and compelling reasons. However, the Court is not able to make medical prognostications about Mr. Rossignol's mother's health condition in approximately three years, what services and support she may need in three years, and whether a caretaker other than Mr. Rossignol may become available in that timeframe.

The same principle applies to Mr. Rossignol's own health conditions. The Court credits Mr. Rossignol's concern for his physical and mental health, but there are no health guarantees for anyone in life, and no one can predict his own health years from now. The Court simply does not have the information before it—and, indeed, the information does not yet exist—that would allow it to forecast the state of the Defendant's medical conditions approximately three years in the future. As such, the claim is not fit and it is thus unripe. *See id.* Both Mr. Rossignol's own health issues and his mother's "depend[] upon future events that may never come to pass, or that may not occur in the form forecasted." *Id.* at 537.

Even if Mr. Rossignol's requested relief met the fitness prong, it would run aground on the second prong: hardship. For a court to determine a case is ripe, the First Circuit requires "a direct and *immediate* dilemma," *id.* at 535 (emphasis supplied by the Court) (internal quotation marks omitted), and by its terms, a reduction of sentence that would not commence for almost three years cannot meet this standard. Mr. Rossignol claims that physical and mental abuse he alleges he suffered while incarcerated amounts to a third extraordinary and compelling reason.

In its order overruling the Defendant's objections to the Magistrate Judge's Recommended Decision, *Order Overruling Objs.*, the Court agreed with the Magistrate Judge that Mr. Rossignol's allegations of physical and mental abuse do not fit within U.S.S.G. § 1B1.13(b)(4), which requires that an allegation of abuse "be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." *Id.* at 4-5. The Court concluded that Mr. Rossignol's allegations of abuse have not been established by any of these means nor is there an allegation of undue delay. *Id.* at 5. Further, the Court observed that "the Defendant alleged that the abuse occurred at FCI Ray Brook and he is currently incarcerated at Fort Dix, so there is no allegation that he is in imminent danger." *Id.*

For the same reason, the Court concludes that, assuming without deciding that Mr. Rossignol properly exhausted his administrative remedies on the abuse claims, the Defendant's claims of abuse are not ripe. Setting aside the issue that Mr.

Rossignol has not given the Court sufficient information to establish abuse or to determine that a motion for compassionate release is the proper request for relief, these allegations of harm are not "direct and immediate" because Mr. Rossignol no longer resides at FCI Ray Brook.  *Id.*

The Court recently considered a similar request for a prospective sentence reduction in *United States v. Kilmartin*, No. 1:14-cr-00129-JAW, 2024 U.S. Dist. LEXIS 85532 (D. Me. May 13, 2024).  In that case, a defendant serving a twenty-five-year sentence asked for a sixty-month sentence reduction which would enable his release approximately six-and-a-half years in the future.  *Id.* at *2, 4, 7.  Like Mr. Rossignol, the defendant in that case argued his mother's health and his own medical conditions were extraordinary and compelling reasons warranting early release.  *Id.* at *4-7.

In *United States v. Kilmartin*, the Court concluded the defendant's motion for sentence reduction was unripe.  *Id.* at *15-16.  The Court explained, "[a]s this motion is not fit for resolution and there is no immediate hardship as that term is used in this context, to reach the merits would be a 'premature adjudication' because it is [premised on] 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Id.* at *15 (quoting *Thomas*, 473 U.S. at 580-81 (citations omitted)).

The Court comes to the same conclusion here.  Mr. Rossignol has not established that the Court has the requisite jurisdiction to decide the matter, and the Court dismisses without prejudice his motion for compassionate release as unripe.

## IV.    CONCLUSION

The Court DENIES the Defendant's Request for *Brady* Materials (ECF No. 83)

and DISMISSES without prejudice Motion for Reduction of Sentence (ECF No. 70).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2025.